UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**CV 07 · 1130**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JEFFREY W. BADER,

Civil Action No.:

**TOWNES, J.**

Plaintiff,

**VERIFIED COMPLAINT**

- against -

AZRACK, J.

**Jury Trial Demanded**

LLOYD C. BLANKFEIN, GARY D. COHN, JON
WINKELRIED, JOHN BROWNE, JOHN H. BRYAN,
CLAES DAHLBÄCK, STEPHEN FRIEDMAN, WILLIAM
W. GEORGE, RAJAT K. GUPTA, JAMES A. JOHNSON,
LOIS D. JULIBER, EDWARD M. LIDDY, RUTH J.
SIMMONS, JOHN S. WEINBERG, CHRISTOPHER A. COLE,
J. MICHAEL EVANS, EDWARD C. FORST, RICHARD A.
FRIEDMAN, RICHARD J. GNODDE, KEVIN W.
KENNEDY, PETER S. KRAUS, MASANORI MOCHIDA,
THOMAS K. MONTAG, JOHN F.W. ROGERS, ERIC S.
SCHWARTZ, MICHAEL S. SHERWOOD, DAVID M.
SOLOMON, DAVID A. VINIAR, GREGORY K. PALM,
ESTA E. STECHER, ALAN M. COHEN, and THE
GOLDMAN SACHS GROUP, INC.,



**FILED**
·IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ MAR 1 6 2007 ★

**BROOKLYN OFFICE**

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff alleges, upon information and belief based upon, *inter alia*, the investigation made

by and through his attorneys and experts, except as to those allegations that pertain to the plaintiff

himself which are alleged upon knowledge, as follows:

1.    The jurisdiction of this Court is founded upon 15 U.S.C. §78aa and 28 U.S.C. §1367.

2.    The claims herein arise under §14(a) of the Securities Exchange Act of 1934, 15

U.S.C. §78n(a), Securities and Exchange Commission (SEC) Rule 14a-9, 17 C.F.R. §240.14a-9,

Schedule 14A, 17 C.F.R. §240.14a-101, and Item 402 of Reg. S-K, 17 C.F.R. §229.402, and under

the laws of the several states including, particularly, the State of Delaware.

3.      Plaintiff brings this derivative action in the right of and for the benefit of The Goldman Sachs Group, Inc. (the "Company" or "Goldman Sachs").

4.      This action is not a collusive one to confer jurisdiction on this court that it would not otherwise have.  This action does not allege securities fraud or any other fraud. It does not seek to recover damages, but rather specific, equitable relief. This is an action based on the false or misleading proxy statement dated February 21, 2007 and distributed for the 2007 annual meeting of the Company's stockholders (the "Proxy Statement") and breach of fiduciary duty.

5.      Plaintiff is a stockholder of the Company and was a stockholder at the time of the wrongs alleged herein, and has been such continuously since then.

6.      The Company is incorporated in the State of Delaware. The Company's stock is listed on the New York Stock Exchange. Its last fiscal year ended on November 24, 2006. As of January 26, 2007, Goldman Sachs had 411,539,918 shares of common stock issued and outstanding. As of March 14, 2007, the last reported sales price by the close of market of the common stock was $200.15 per share.  Goldman Sachs is the successor to a commercial paper business founded in 1869. It is a global leader in investment banking, trading and principal investment, and asset management and securities services.

7.      The Goldman Sachs Foundation (the "Foundation") is a New York not-for-profit corporation that is funded by the Company. Its principal office is in the same building as that of the Company.

8.      Defendant John Browne, age 58, referred to in the Proxy Statement as Lord Browne of Madingley, has been a member of the Company's board of directors since May 1999. He is a senior executive of BP p.l.c., formerly known as British Petroleum Company p.l.c., and since October 2006, he has been the chairman of the advisory board of Apax Partners Worldwide LLP, the

international global private equity group. He is chairman of the international advisory board of the London School of Economics and Political Science, to which the Foundation has donated $380,000 since 2002. Mr. Browne is chairman emeritus of the advisory board of the Stanford University Graduate School of Business. In 2005 the Foundation donated $500,000 to the Stanford Educational Leadership Institute. He is a member of the dean's advisory board of Tsinghua University School of Economics and Management in Beijing China. The Foundation has donated $3,500,000 since 2002 to the Friends of Tsinghua School of Economics and Management As a member of these boards, it is part of Mr. Browne's job to raise money for these institutions.

9.      Defendant John H. Bryan, age 70, has been a member of the Company's board of directors since November 1999. He is the retired chairman and CEO of Sara Lee Corporation. In 1994, 1997, and 2000 he was co-chairman of the annual meetings of the World Economic Forum. He chaired a successful campaign to raise $100 million to renovate the Chicago Lyric Opera House and Orchestra Hall, to which the Company has made substantial contributions.

10.      Defendant Claes Dahlbäck, age 59, has been a member of the Company's board of directors since June 2003. Since December 1998, he has been the chairman of the board of directors of Stora Enso Oyj, the international paper products company in Finland, but the Proxy Statement modestly refers to him as simply a member of its board of directors. Mr. Dahlbäck has a degree in economics and is a senior adviser to Investor AB, based in Sweden, and is an executive director of Thisbe AB, an investment company owned by the Wallenberg Foundations. The Company has invested more than $600 million in funds to which Mr. Dahlbäck is an adviser.

11.      Defendant Stephen Friedman, age 69, has been a member of the Company's board of directors since April 2005. He worked at the Company's predecessor, The Goldman Sachs Group, L.P., from 1966 to 1994 and rose to become a senior partner and chairman of its management

committee. Mr. Friedman probably knew Fischer Black (of the Black-Scholes option pricing model), who joined the predecessor firm in 1984 and also became a partner there. From 1998-2002, Stephen Friedman worked at the predecessor to Stone Point Capital, a private equity firm to which he returned in May 2005 and where he became chairman in June 2006. In between, from December 2002 to December 2004, he was an assistant to the President for Economic Policy and director of the National Economic Council. The Company has invested $670 million in funds managed by Mr. Friedman. In addition, Mr. Friedman is the chairman emeritus of the board of trustees of Columbia University. As such, it is part of his job to raise money for the university. Since 2002, the Foundation has donated $640,000 to support an MBA business plan competition and education program at Columbia University.

12.      Defendant William W. George, age 64, has been a member of the Company's board of directors since December 2002. He was the chairman and CEO of Medtronic, Inc. and is currently a professor at the Harvard Business School. He is a board member of the World Economic Forum USA.

13.      Defendant Rajat K. Gupta, 58, has been a member of the Company's board of directors since November 2006. He is a senior partner at McKinsey and Company, where he has worked since 1973. He is the chairman of the board of the Indian School of Business in Hyderabad, India. Since 2002 the Foundation has donated $1,600,000 to the Friends of the Indian School of Business. Mr. Gupta is also a member of the dean's advisory board of Tsinghua University School of Economics and Management in Beijing, China. Since 2002 the Foundation has donated $3,500,000 to the Friends of Tsinghua School of Economics and Management. Mr. Gupta is a member of the United Nations Commission on the Private Sector and Development, and he is a special adviser to the UN Secretary General on UN Reform. Since 2002 the Foundation has donated $1,665,000 to the

Model UN program. As a member of these boards and this commission, it is part of his job to raise money for these institutions.

14.     Defendant James A. Johnson, age 63, has been a member of the Company's board of directors since May 1999. From 1990 to December 1999 he was a senior executive at Fannie Mae. From January 2000 he has worked in private investment firms. He is also on the boards of directors of United Health Group, Inc. and KB Home, two public companies notoriously burdened by stock option back-dating problems.

15.     Defendant Lois D. Juliber, age 58, has been a member of the Company's board of directors since March 2004. She was a senior officer at Colgate-Palmolive Company from 1994 to April 2005.

16.     Defendant Edward M. Liddy, 61, has been a member of the Company's board of directors since July 2003. He is chairman of the Allstate Corporation, the parent of Allstate Insurance Company, where he was a senior officer since 1995. He is the chairman of the Boys and Girls Clubs of America. Since 2003 the Foundation has donated $190,000 to the clubs and to programs that it supports. As chairman, it is part of Mr. Liddy's job to raise money for the clubs.

17.     Defendant Ruth J. Simmons, age 61, has been a member of the Company's board of directors since January 2000. She has been president of Brown University since July 2001. Ms. Simmons was president of Smith College from 1995 to June 2001, and was vice provost of Princeton University from 1992 to 1995. As president of Brown University it is part of her job to raise money for the university. The Foundation has pledged funding in an undisclosed amount to share in the support of a position of Program Director at The Swearer Center for Public Service at Brown University.

18.     Defendants Browne, Bryan, Dahlbäck, Friedman, George, Gupta, Johnson, Jubiler, Liddy, and Simmons are all the members of the compensation committee of the Company's board of directors.

19.     Defendant Lloyd C. Blankfein has been a member of the Company's board of directors since April 2005 and its chairman since June 2006. He has worked for Goldman Sachs and its predecessor since 1994. He became its CEO in June 2006.

20.     Defendant Gary D. Cohn has been a member of the Company's board of directors since June 2006, when he also became president and co-chief operating officer. Before that, and since 1996, he worked for Goldman Sachs and its predecessor.

21.     Defendant Jon Winkelried has been a member of the Company's board of directors since June 2006, when he also became president and co-chief operating officer. Before that, and since 1995, he worked for Goldman Sachs and its predecessor.

22.     The ten members of the compensation committee and defendants Blankfein, Cohn, and Winkelried are all the members of the Company's board of directors.

23.     Defendant John S. Weinberg has been a vice chairman of Goldman Sachs since June 2006 and has been a senior officer of Goldman Sachs and its predecessor since 1997.

24.     Defendants Alan M. Cohen, Edward C. Forst, Kevin M. Kennedy, Gregory K. Palm, Esta E. Stecher, and David A. Viniar are all executive vice presidents of Goldman Sachs. They and defendants Lloyd C. Blankfein, Gary D. Cohn, John S. Weinberg, and Jon Winkelreid are all members of the management committee and participants in the compensation program consisting of cash and equity grants, including stock options grants measured according to the Black-Scholes option pricing model, as further alleged in this complaint.

6

25. Defendants Christopher A. Cole, J. Michael Evans, Richard A. Friedman, Richard J. Gnodde, Peter S. Kraus, Masanori Mochida, Thomas K. Montag, John F. W. Rogers, Eric S. Schwartz, Michael S. Sherwood, and David M. Solomon are members of the management committee, and they participated in the aforesaid compensation program for the fiscal year ended November 24, 2006.

26. Plaintiff has not made any demand on the Company's board of directors to institute this action against the individual defendants. To the extent that the demand requirement is governed by Delaware law, if a demand is made and rejected, the stockholder's challenge must be not to the underlying transaction, but to the board's decision not to bring the lawsuit. Delaware law thus substantially alters the nature of a derivative plaintiff's claim where demand has been made and conversely gives shareholders considering litigation good reason not to make demand.

27. A majority of the board is either interested in the transactions and events alleged herein, or they otherwise lack independence. Of the 13 members of the board, Lloyd C. Blankfein, Gary D. Cohn, and Jon Winkelreid are interested in the material understatement of their option grants and total compensation because it creates the illusion that they are more compliant with their statutory and fiduciary duties of disclosure and their fiduciary duties not to accept excessive compensation. At the same time, they are financially interested in receiving more compensation.

28. Of the ten other members of the Company's board of directors, Messrs. Dahlbäck and Friedman are interested and lack independence because it is part of their business to attract investors. Goldman Sachs has invested more than $600 million with each of them. Messrs. Browne, Bryan, Friedman, Gupta, and Liddy, and Mr. Simmons have all been assisted in their fund raising responsibilities by contributions from the Foundation, which is funded by the Company. They, too,

are interested and lack independence. A total of nine of the thirteen board members are interested and lack independence.

29.     Even in the absence of a traditionally interested (or non-independent) board, demand is excused under the facts at bar.

30.     The demand requirement and its exceptions are to encourage intra-corporate resolution of disputes and obtain the business judgment of the board on whether the litigation is in the best interest of the corporation and its shareholders.  However, where a stockholder sues the board of directors over an act that is not a decision concerning the management of the business and affairs of the corporation, the business judgment rule does not apply.  Delaware law excuses demand whenever the challenged act of the board is not the product of a valid exercise of business judgment, regardless of whether a majority of the board is disinterested and independent.  The board's conduct concerning the misrepresentations and omissions, and in violating the express terms and provisions of the program for compensating the defendants who are members of the Company's management committee are not matters of business judgment, and they are not protected by the business judgment rule for the following reasons:

(a)     When, for the stockholders' annual meeting, a corporate board solicits stockholder's votes for directors, the board owes the stockholders a statutory and fiduciary duty of full and fair disclosure, meaning that all material facts must be disclosed and no material facts may be omitted. This duty of disclosure is a thing apart from the duty and authority to deal with the business and property of the corporation. Courts give deference to a corporate board of directors as to questions of management of the corporation's business, but not as to questions of the board's performance of its disclosure duties, and for two reasons. First, a board's decision, even in good faith, to misstate or to omit a material fact cannot be defended on the grounds that reasonable persons could differ on the

8

subject. Second, although courts may not be well suited to making business decisions, courts are well suited to deciding questions concerning the quality of, and circumstances surrounding, disclosures.

(b)     As with Delaware law, under federal policy, there is no need for prior demand on the board of directors with respect to the claim of misrepresentations and omissions in the Proxy Statement.

(c)     At bar, the Proxy Statement contains materially false or misleading statements and omissions concerning the value of options granted to executive officers, the premises and assumptions used in evaluating stock options under the Black-Scholes option pricing model, and the methods and procedures for determining executive pay, under federal law and under Delaware law. It also materially understates the total compensation of the CEO and the other named executive officers.

(d)     The entire board is neither disinterested nor independent since every member of the board is liable for the material misstatements and omissions in the Proxy Statement.

(e)     The individual defendants who are members of the Company's board of directors have sought to entrench themselves by soliciting proxies for their own re-election.

(f)     The board of directors has committed waste in the matter of executive pay. Waste is egregious misconduct that is not protected by the business judgment rule, and it provides an excuse for not making demand. The compensation committee, which is a  majority of the full board of directors, having decided to grant stock options based on the Black-Scholes value of those options, then violated their own resolution by using a materially lower number than the Black-Scholes value to grant more options than allowed under that  resolution. Also, the compensation committee selected a group of comparable companies by which to assess the reasonableness of the total

executive compensation, but they paid out materially, indeed shockingly, greater amounts than what the comparable companies paid. Defendants Lloyd C. Blankfein, Gary D. Cohn, and Jon S. Winkelried were interested in these payments.

31.     The individual defendants who constitute the Company's board of directors authorized the distribution of the Proxy Statement to solicit the proxies of Goldman Sachs's stockholders for, *inter alia*, the re-election to the board of directors of the current members of that board; i.e., they solicited proxies for their own re-election.

32.     The defendants who are members of the Company's board of directors and defendants Viniar and Weinberg permitted the use of their names in the Proxy Statement to solicit proxies.

33.     With respect to the solicitation of proxies for the annual meeting of stockholders on March 27, 2007 the Proxy Statement contains materially false or misleading statements and omits material facts concerning the compensation of the Company's officers. The purpose of a Proxy Statement is to inform the stockholders, not to challenge their critical wits. As a result, the Proxy Statement renders the stockholders unwitting agents of self-inflicted damage.

34.     On November 7, and December 29, 2006 the amendments to Schedule 14A and Reg. S-K took effect for proxy statements to be distributed to the stockholders of companies for which the next fiscal year was to begin after December 15, 2006. Because the Company's current fiscal year began November 25, 2006, the Proxy Statement at bar is governed by the earlier forms of Schedule 14A and Reg. S-K.

35.     The Proxy Statement violates Schedule 14A and Regulation S-K. Item 8 of Schedule 14A, 17 C.F.R. §240.14a-101, pertains to Compensation of Directors and Executive Officers. It expressly requires that a Proxy Statement must furnish the information required by Item 402 of Reg. S-K when the stockholders' proxies are solicited for the election of directors. 17 C.F.R.

§229.402(c)(1) requires the Proxy Statement to have a tabular provision of facts concerning stock option grants to the named executive officers in the last fiscal year. At bar, the named executive officers are defendants Blankfein, Cohn (Gary D.), Winkelfried, Viniar, and Weinberg. Sub-Item (c)(2) of Item 402 specifies what the table must include. So far as relevant at bar, it requires the following information:

(i)     The name of the executive officer (column (a));

(ii)    Number of securities underlying options granted (column (b));

(iii)   The percent the grant represents of total options granted to employees during the fiscal year (column (c));

(iv)    The per-share exercise or base price of the options granted (column (d)). If such exercise or base price is less than the market price of the underlying security on the date of grant, a separate, adjoining column shall be added showing market price on the date of grant;

(v)     The expiration date of the options (column (e)); and

(vi)    Either (A) the potential realizable value of each grant of options or (B) the present value of each grant, as follows;

(A)     The potential realizable value of each grant of options, assuming that the market price of the underlying security appreciates in value from the date of grant to the end of the option term, at the following annualized rates:

1.      5%;

2.      10%; or

(B)     The present value of the grant at the date of grant, under any option pricing model.

The Proxy Statement used (c)(2)(vi)(B) to value the stock options granted to the named executive officers. Item 402 (c)(2) contains instructions: Instruction 9 provides as follows:

> Where the registrant chooses to use the grant-date valuation alternative specified in paragraph (c)(2)(vi)(B) of this item, the valuation shall be footnoted to describe the valuation method used.  Where the registrant has used a variation of the Black-Scholes or binomial option pricing model, the description shall identify the use of such pricing model and describe the assumptions used relating to the expected volatility, risk-free rate of return, dividend yield and time of exercise.  Any adjustments for non-transferability or risk of forfeiture also shall be disclosed.  In the event another valuation method is used, the registrant is required to describe the methodology as well as any material assumptions.

36.     The Proxy Statement, at page 17,  contains a section entitled  "Option Grants in Last Fiscal Year."  The table is as follows:

### OPTION GRANTS IN THE LAST FISCAL YEAR (a)
### Individual Grants

| Named Executive Officer | Number of Securities Underlying Options Granted | Percent of Total Options Granted to Employees in Fiscal Year | Exercise Price ($/Sh) | Expiration Date | Grant Date Present Value (b) |
|---|---|---|---|---|---|
| Lloyd C. Blankfein | 209,228 | 7.12% | $199.84 | 11/25/2016 | $10,453,031 |
| Gary D. Cohn | 205,228 | 6.99% | $199.84 | 11/25/2016 | $10,253,191 |
| Jon Winkelried | 205,228 | 6.99% | $199.84 | 11/25/2016 | $10,253,191 |
| David A. Viniar | 153,184 | 5.21% | $199.84 | 11/25/2016 | $ 7,653,073 |
| John S. Weinberg | 121,160 | 4.12% | $199.84 | 11/25/2016 | $ 6,053,154 |

37.     The text of footnote (a) is not reprinted in this complaint.

38.     Footnote (b), in relevant part, represents:

> "Valued based on a Black-Scholes option pricing model. The exercise price of each Option ($199.84) is equal to the closing price-per-share of Common Stock on the NYSE on December 15, 2006, the date the Options were granted. The primary inputs to the Option valuation model were: 27.5% volatility; 4.6% risk-free rate of return; 0.7% dividend yield; and 7.5 year expected life, which reflects the sales restrictions on the underlying shares that apply until January 2011."

The aforesaid assumptions in footnote (b) are expressly and affirmatively required to be in the Proxy Statement by Instruction 9 to 17 C.F.R. §229.402(c) (2)(vi)(B).

39.     Using the assumptions stated in footnote (b), the amounts represented in the Grant Date Present Value column are materially false. The correct grant date values and the difference between them and what was represented are as follows:

| Named Executive Officer | Value As Reported | Correct Black-Scholes Value | Difference |
|---|---|---|---|
| Lloyd C. Blankfein | $10,453,031 | $15,915,974 | $5,462,943 |
| Gary D. Cohn | 10,253,191 | 15,611,694 | 5,358,503 |
| Jon Winkelreid | 10,253,191 | 15,611,694 | 5,358,503 |
| David A. Viniar | 7,653,073 | 11,652,707 | 3,999,634 |
| John S. Weinberg | 6,053,154 | 9,216,641 | 3,163,487 |

These differences are material because of the size of the amounts and because these values are expressly and affirmatively required by statute and regulations.  These misrepresentations are also a violation of 17 C.F.R. §240.14a-9.

40.     The Proxy Statement at page 26 represents that the total compensation, benefits, and perquisites of defendant Blankfein for 2006 was $54,723,364. That representation was specifically incorporated by reference by the Company into its Form 10-K for fiscal year 2006, a filing under the Securities Exchange Act of 1934. That representation is materially false; the actual total was $60,186,307.  This misrepresentation is also a violation of 17 C.F.R. §240.14a-9.

41.     Footnote (b) to the Option Grants table also represents, in relevant part:

The values of Options described above are hypothetical and have been provided solely to comply with the rules of the SEC. The actual value, if any, that will be realized upon the exercise of an Option will depend upon the difference between the exercise price of the Option and the market price of the Common Stock on the date that the Option is exercised.

42.     The foregoing representations in footnote (b) are materially false or misleading. Reg. S-K, 17 C.F.R. §229.402(c)(2)(vi)(B) does not refer to values obtained by option pricing models as "hypothetical."  Moreover, in the SEC Release *Executive Compensation Disclosure*, 1992 WL 301259 at *4 (Oct. 16, 1992), which made final 17 C.F.R. §229.402(c)(2)(vi)(B), the SEC refers to

the Black-Scholes option pricing model as "a recognized valuation formula." The SEC there further said that such a formula will be permitted as an alternative to the use of "[h]ypothetical rates of stock price appreciation" described in 17 C.F.R. §229.402(c)(2)(vi)(A).

43.    The foregoing representations in footnote (b) are also false or misleading because the Black-Scholes values of options granted do not serve merely an SEC disclosure requirement. Those values also were to be used by the compensation committee of the board of directors to determine the number of options to grant to the most highly paid officers of Goldman Sachs who are the members of its management committee.

44.    The foregoing representations in the last sentence of footnote (b) are false or misleading because the Black-Scholes value is not a forecast of the amount to be realized upon the exercise of the option in the future.  It is the present value of a hedged portfolio that will equal the difference at maturity between the market price of the underlying stock and the exercise price of the option.

45.    The Proxy Statement represents that the compensation committee engaged outside consultants to assist it with benchmarking and analyses with respect to executive compensation and benefit practices and design. The Proxy Statement also represents that the compensation committee decided upon amounts to pay members of the management committee for 2006 in part by considering proposed amounts of pay in light of the amounts of pay at Lehman Brothers Holdings Inc., Morgan Stanley, Merrill Lynch & Co., Inc., Citigroup Inc., and J.P. Morgan Chase & Co.

46.    These representations were specifically incorporated by reference by the Company into its Form 10-K for fiscal year 2006, a filing under the Securities Exchange Act of 1934, and they are materially false or misleading  because the Proxy Statement omits to disclose how much higher the pay was to the Company's executives than to the executives at the comparable firms. The

14

differences are so great as to shock the conscience. See *infra*, ¶¶62, 64. Omission of these facts renders the Proxy Statement materially false or misleading, because it represents that the Company's executive pay is within the range of the executive pay at the comparable companies.

47.     The members of the Company's board of directors and defendants Viniar and Weinberg have statutory and fiduciary duties of disclosure to correctly report how executive pay is determined and to disclose all the material facts concerning the differences in the Company's executive pay and the executive pay at the comparable companies. It is not the burden of the Company's stockholders to research these facts, but rather the duty of the board and defendants Viniar and Weinberg to disclose these differences and the reasons for them.

48.     Under Delaware law, directors and officers have a fiduciary duty to disclose all material facts when they seek stockholder action or communicate with stockholders. The fiduciary duty to disclose often overlaps and exceeds the affirmative duties to disclose under the federal securities laws.  Where the federal laws mandate disclosure, Delaware law requires that any disclosure made be full and fair.  There need not be an affirmative disclosure requirement under federal law, however, for a fiduciary duty to disclose to arise under Delaware law. Moreover, under Delaware law, stockholders are entitled to rely on the truthfulness of communications to them even if they are unrelated to requests for stockholder action. To the extent that plaintiff has a claim under federal law, he has an even greater claim under Delaware law.

49.     Unless the court enters an injunction requiring corrected disclosures in this and future proxy statements, the directors will be elected based on materially false or misleading proxy statements.

50.     These misrepresentations are presumptively material for they refer to statements expressly and affirmatively required by SEC regulations.

51.     All the directors and defendants Viniar and Weinberg are highly sophisticated people. They all were negligent in that they knew or should have known that the representations and omissions in the Option Grants table were materially false or misleading. To the extent that this complaint prays for injunctive relief to correct materially false or misleading representations, such remedies are available even if they were not negligent.

52.     The directors' and defendants Viniar's and Weinberg's acts and omissions have caused injury to the Company. Good disclosure is valuable and bad disclosure injures the Company. The SEC, in Executive Compensation Disclosure, 2006 WL 3782720 at *15 (Dec. 22, 2006) (concerning improved disclosure of stock options values in proxy statements) said:

> Although difficult to quantify, disclosure under the amendments will benefit investors in terms of the transparency, completeness and accessability of executive compensation disclosure.

It is difficult, but not impossible. If the directors do not correct these disclosures, they should account to the Company for the injury that it sustains.

53.     For the fiscal year ended November 24, 2006, the compensation committee decided that the amount of stock options to be granted to the members of the management committee would be based on the Black-Scholes value of those options.

54.     For example, the named executive officers were to be granted stock options with Black-Scholes values as follow:

| Named Executive Officer | Black-Scholes Value Of Options |
|---|---|
| Lloyd C. Blankfein | $10,453,031 |
| Gary D. Cohn | 10,253,191 |
| Jon Winkelried | 10,253,191 |
| David A. Viniar | 7,653,073 |
| John S. Weinberg | 6,053,154 |

Each of the members of the management committee was to be assigned a dollar value of stock options to be granted.

55.     In determining the number of options to award to each member of the management committee, they divided the Black-Scholes value of the total grant by the Black-Scholes value per share, but in performing this arithmetical exercise in division, they used the wrong value per share. If they had used the correct Black-Scholes value, the Number Of Securities Underlying Options Granted to the named executive officers would have changed, as follows:

| Named Executive Officer | Reported Number | Correct Number | Difference |
|---|---|---|---|
| Lloyd C. Blankfein | 209,228 | 137,413 | 71,815 |
| Gary D. Cohn | 205,228 | 134,786 | 70,442 |
| Jon Winkelried | 205,228 | 134,786 | 70,442 |
| David A. Viniar | 153,184 | 100,606 | 52,578 |
| John S. Weinberg | 121,160 | 79,573 | 41,587 |

Similar changes would have been made for the other members of the management committee.

56.     In granting stock options to the members of the management committee, the compensation committee failed to follow the formula that it established.

57.     The members of the compensation committee have fiduciary duties of loyalty to the Company to follow the applicable formula for granting stock options. Failure to perform those duties constitutes waste for which they must account to the Company.

58.     Defendants Lloyd C. Blankfein, Gary D. Cohn, and Jon Winkelried are both officers and directors of the Company, and they also have fiduciary duties of loyalty to the Company. Accepting more stock options than is correct under the applicable formula is a breach of that duty for which they must account to the Company.

59.     All the other individual defendants are executive officers of the Company who have the same fiduciary duties of loyalty as defendants Lloyd C. Blankfein, Gary D. Cohn, and Jon

Winkelried. Accepting more stock options than is correct under the applicable formula is a breach of that duty for which they must account to the Company.

60.     Receipt and acceptance by the members of the management committee of more stock options than is correct under the formula constitutes unjust enrichment for which they must account to the Company.

61.     The payments made for fiscal year ended 2006 to defendants Blankfein, Cohn, Winkelfried, Viniar, and Weinberg, referred to as compensation in the Proxy Statement, are grossly excessive, even as materially understated in the Proxy Statement.

62.     The reported pay for fiscal year ended 2006 of the top three executive officers of Goldman Sachs, Merrill Lynch, Lehman Brothers Holdings Inc., and Morgan Stanley was as follows:

| | |
|---|---|
| Goldman Sachs | $160.0 million |
| Merrill Lynch | $119.0 million |
| Morgan Stanley | $105.1 millions |
| Lehman Brothers | $ 92.3 million |

The actual amount paid to the top three executives of Goldman Sachs, with their stock options correctly valued, was $176 million.

63.     These four firms are of comparable size and have similar business in investment banking and securities. In terms of assets, stockholders' equity, and net income the fiscal year ended 2006 amounts are as follows:

| Firm | Total Assets | IN BILLIONS Stockholders Equity | Net Income |
|---|---|---|---|
| Goldman Sachs | $ 838 | $36 | 9 |
| Morgan Stanley | 1,121 | 35 | 7 |
| Lehman Brothers | 504 | 19 | 4 |
| Merrill Lynch | 841 | 39 | 7 |

The differences in pay at Goldman Sachs and the other three firms cannot be justified in terms of the success achieved and the amounts under jurisdiction.

64.     The contrast is even more shocking when compared to the large companies that run retail banking businesses along with investment banking and securities businesses. In fiscal year ended 2005, the three most highly paid executives at Bank of America Corporation, Citigroup Inc., and J.P. Morgan Chase were as follows

| | |
|---|---|
| Bank of America | $ 40 million |
| Citigroup | $ 61 million |
| J.P Morgan Chase | $ 84 million. |

65.     These companies are all much bigger and more complicated than Goldman Sachs. In terms of assets, stockholders equity, and net income, the fiscal year end 2006 amounts were as follow:

| Firm | Total Assets | Stockholders Equity | Net Income |
|---|---|---|---|
| | ----------------------In Billions---------------------------- | | |
| Bank of America | 1,488 | 130 | 21 |
| Citigroup | 1,884 | 119 | 22 |
| J.P. Morgan Chase | 1,351 | 116 | 20 |

66.     The other members of the Company's management committee are paid on a scale similar to its three most highly paid executives.

67.     The members of the compensation committee of the Company's board of directors owe the Company fiduciary duties of loyalty, including the duty to pay only reasonable compensation to executives.

68.     The members of the Company's management committee have the fiduciary duty to accept only reasonable amounts of pay. Their acceptance and retention of more than reasonable amounts of pay constitutes a breach of that duty and unjust enrichment.

69.     The aforesaid breach of duties of disclosure and loyalty have injured the Company. WHEREFORE, plaintiff prays for the following relief:

A.   An injunction against the 2007 annual meeting of stockholders;

B.   Equitable relief against defendants from hereafter engaging in the practices as particularized above;

C.   Voiding the elections of directors for 2007 if no injunction is entered before the meeting;

D.   An equitable accounting against all the individual defendants in favor of the Company for the injuries that it has and will sustain by virtue of the conduct alleged herein;

E.   Awarding plaintiff the costs and disbursements of this action, including reasonable accountants', experts' and attorneys' fees; and

F.   Granting such other, further relief, whether similar or different, as by this Court may be deemed just and proper.

Dated: New York, New York
       March 15, 2007

                              BARRACK, RODOS & BACINE

                              Alexander Arnold Gershon (AG 3809)
                              Regina M. Calcaterra (RC 8583)
                              Gloria Kui (GK 5661)
                                        (not yet admitted in E.D.N.Y.)
                              1350 Broadway, Suite 1001
                              New York, New York 10018
                              (212) 688-0782
                              *Attorneys for Plaintiff*

*And, Of Counsel*
Barrack, Rodos & Bacine
Daniel E. Bacine
Gerald J. Rodos
Two Commerce Square
2001 Market Street -- Suite 3300
Philadelphia, Pennsylvania 19103
(215) 963-0600

20

## VERIFICATION

I, Jeffrey W. Bader, under penalties of perjury, hereby do declare that I am the plaintiff in the foregoing complaint, that I have read the complaint, and that the facts therein are true to my own knowledge, except as to matters stated therein to be alleged upon information and belief, and as to those matters, I believe them to be true and correct to the best of my knowledge, information and belief.


Dated: New York, New York
       March _15_ , 2007


Jeffrey W. Bader